STEVEN G. KALAR
Federal Public Defender
Northern District of California
SOPHIA WHITING
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:	(415) 436-7700
Facsimile:	(415) 436-7706
Email:	Sophia_Whiting@fd.org

Counsel for Defendant Martinez Cuevas

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>SERGIO MARTINEZ CUEVAS,<br>  a.k.a. Cristopher Alvarez Garcia<br><br>   Defendant. | **Case No.:** CR 20-309 CRB<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

## INTRODUCTION

Sergio Martinez Cuevas promptly accepted responsibility for his involvement in low-level drug dealing by waiving indictment and lodging a plea agreement with the government in August 2020. He is 21 years old and this is his first conviction. Mr. Martinez Cuevas has spent 2.5 months in jail, in addition to just over one month on home confinement, for a total of 3.5 months of qualifying confinement under the Guidelines. *See* USSG §5C1.1(c). However, amid resolving this case, Mr. Martinez Cuevas made the grave mistake of absconding from pretrial supervision by removing his location monitor and leaving his uncle's apartment, after feeling he had become a burden to his extended family. He was arrested on December 15, 2020, and has been in custody since then. All

parties agree that Mr. Martinez Cuevas' guidelines are 6 to 12 months, and he falls into Zone B of the Guidelines. A slight downward variance to time served—3.5 months of confinement—is appropriate in light of this being his first ever conviction, his youth, his background, the difficulty of being in custody during the pandemic, and his inevitable deportation to Honduras.

## BACKGROUND

Mr. Martinez Cuevas was born and raised in Tegucigalpa, the capital city of Honduras. Both of his parents worked full time, yet the family of four still had trouble surviving. They lived together in one small room, which was their shared bedroom, living room, and kitchen. His family did not always have enough to eat or other necessities.

Mr. Martinez Cuevas attended school through ninth grade, when he started working full time to support his family. He has been working in some capacity since he was twelve years old, primarily in construction, carpentry, and soldering. Despite working in multiple trades, he would only make $6 per day, $250 per month. The vast majority of this money went to taking care of his family. It was not enough.

In addition to financial struggles, Mr. Martinez Cuevas was exposed to gang activity daily in the dangerous neighborhood where he grew up. Tegucigalpa, also known as Distrito Central, was one of the most violent cities in the world when Mr. Martinez Cuevas was a teenager.[1] Tens of thousands of Hondurans have been displaced by "raging gang violence" and recruitment efforts.[2] He was rightfully fearful of the gangs, knowing how many innocent people were being killed, harassed, and forcefully recruited. He has never been involved in a gang and did not want them to try to recruit him, so this ultimately influenced his decision to leave.

Still a teenager, Mr. Martinez Cuevas therefore decided to make the arduous journey to the

---

[1] *Gangs in Honduras*, INSIGHT CRIME (April 21, 2016) at 1, available at https://www.insightcrime.org/images/PDFs/2015/HondurasGangs.pdf; Amanda Macias and Pamela Engel, *The 50 Most Violent Cities in the World*, BUSINESS INSIDER (January 23, 2015), available at https://www.businessinsider.com/the-50-most-violent-cities-in-the-world-2015-1; *Central America Refugee Crisis*, UNHCR, available at https://www.insightcrime.org/images/PDFs/2015/HondurasGangs.pdf.
[2] Zach Dyer, *Gang threat drives growing displacement inside Honduras*, UNHCR (September 5, 2016), available at https://www.unhcr.org/en-us/news/stories/2016/9/57c8392e4/gang-threat-drives-growing-displacement-inside-honduras.html.

United States in search of work. He travelled alone and with strangers. The trip took 1.5 months by foot and train. Upon arriving to the United States, he first settled down in New York, where his uncle lived. While in New York, he worked in construction. His uncle then moved cross-country to Hayward, California, so Mr. Martinez Cuevas followed.

Mr. Martinez Cuevas was unable to find legitimate work in the new area, especially after the start of the pandemic. On top of that, his family needed his support more than ever, since the pandemic had put them out of work. They relied on receiving at least half of all of his earnings. In his desperation, Mr. Martinez Cuevas made the terrible decision to become involved with drugs. On May 18, 2020, SFPD officers stopped Mr. Martinez Cuevas based on a stay-away order and found drugs on him. By pleading guilty, he is accepting responsibility that these drugs were intended for sale.

The federal government decided to charge Mr. Martinez Cuevas as part of their Federal Initiative for the Tenderloin (FIT) rather than leave the case in state court. Mr. Martinez Cuevas remained in federal custody for nearly a month only because he was confined in quarantine. After his quarantine was complete, he was released on conditions including home confinement at his uncle's apartment. Mr. Martinez Cuevas had multiple violations, though they were for very brief periods and he explained to the pretrial officer that he was trying to get some fresh air (this was during a heat wave) and help his uncle get things from the car. He was ultimately confined to his uncle's 2-room apartment for more than one month. He then unfortunately made the mistake of removing his monitor and leaving, because he did not have any money and he felt he was becoming a burden on his uncle's family. He had many other options, and there is no excuse for his conduct. He may have been able to resolve this case through a guidelines sentence of home confinement, but instead he is back in jail because of this rash choice and his subsequent arrest.

Mr. Martinez Cuevas knows the ultimate outcome is his deportation. He has never previously been deported, and he does not want to return to the United States. Upon his return to Honduras, he plans to look for another job in the trades and help his family build a humble home. He is a young man who wants to be with his family and does not want to be separated from his parents again.

## DISCUSSION

### I. The Sentencing Guidelines (18 U.S.C. § 3553(a)(4))

The government and Mr. Martinez Cuevas agree that the Adjusted Offense Level is 10. He has no prior convictions, and is in Criminal History Category I. Presentence Investigation Report (PSR) ¶ 10. His advisory Guideline range is therefore 6 to 12 months. He falls into Zone B, which allows for alternatives to incarceration and therefore contemplates credit for the 35 days he was on home confinement. *See* USSG §5C1.1(c).

Although the Court must remain mindful of the Sentencing Guidelines recommendation, the advisory Guideline range is not presumptively reasonable and it cannot be given any more or less weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The court's paramount concern must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991. A sentence of time served, followed by three years of supervised release, best aligns with the goals and factors of section 3553(a) for the following reasons.

### II. Mr. Martinez Cuevas' Age and Background Warrant a Downward Departure (18 U.S.C. § 3553(a)(1))

As detailed in the Background section above, Mr. Martinez Cuevas' young age and difficult background counsel a downward variance from the advisory range. *See* 18 U.S.C. § 3553(a)(1). He came to this country alone while he was still a teenager. He has worked hard in difficult industries, but his limited education, youth, and undocumented immigration status have made it incredibly difficult to secure stable employment, especially during the pandemic. At the time of the offense, and over the past year, he could not find a job and was having trouble making ends meet for the family he supports in Honduras. He relates these circumstances not to minimize his conduct, but to provide context for it. He also realizes that he made the situation much worse by absconding and getting arrested for the same conduct, and there is no excuse for these choices. However, importantly, he has a plan to avoid these circumstances in the future, when he is deported and reunited with his family.

### III. A Downward Departure is Appropriate to Reflect the Severity of the Offense (18 U.S.C. § 3553(a)(2)(A))

Furthermore, a downward departure is warranted because this is a less serious offense compared with other federal crimes. *See* 18 U.S.C. § 3553(a)(2)(A). Mr. Martinez Cuevas takes responsibility for his criminal conduct in the instant offense and recognizes that selling any amount of drugs negatively impacts public health. Mr. Martinez Cuevas particularly regrets that this offense involved fentanyl, which he has now learned is particularly dangerous. He was naïve about drugs and, outside of the instant offense, he has never been accused of having fentanyl.

With that said, the scope of his offense should still be viewed in relation to other federal cases. The fact is that street-level drug sales are a minor offense compared to the vast majority of federal prosecutions, including drug prosecutions. If not for the FIT initiative, this offense would not be prosecuted in federal court. To the contrary, federal drug cases normally present more serious facts, such as substantially larger quantities of controlled substances, weapons, or an organized drug trafficking operation. In comparison, the offense in Mr. Martinez Cuevas' case is relatively minor.

### IV. A Sentence of Time Served Affords Adequate Deterrence and Mr. Martinez Cuevas' Inevitable Deportation Minimizes Public Safety Concerns (18 U.S.C. §§ 3553(a)(2)(B) and (C))

Mr. Martinez Cuevas also respectfully contends that a below-guidelines sentence, given his difficult time in custody and inevitable deportation, provides sufficient deterrence and public protection.

The 2.5 months Mr. Martinez Cuevas has already spent at Santa Rita Jail during the pandemic have been hard time. He has been in and out of quarantine, which means he could not attend court, counsel could not schedule meetings with him, he had no access to programming or recreational spaces, and he lived in constant fear of catching the virus. The longer Mr. Martinez Cuevas remains in custody, the greater the risk to his health. This is an exceptionally difficult and dangerous time to serve a sentence. Time in custody now is much harder than under normal circumstances and will not change anytime soon. This is especially true at Santa Rita Jail, which is notably more expensive and restricted than other jails or prisons. Santa Rita charges multiple dollars for calls that are free elsewhere, gives inadequate and untimely meals, and has limited programming, even in the best of

times. Thus, Mr. Martinez Cuevas makes the request for a downward departure in consideration of the fact that 2.5 months custody is a much harsher sanction than under normal circumstances.

Furthermore, Mr. Martinez Cuevas' detention and removal from the United States following his release from federal imprisonment, and his plan to stay in Honduras, minimize any public safety concerns. Unlike a similarly situated citizen defendant, Mr. Martinez Cuevas will not return to the local community following completion of his sentence. He will literally be removed from the community. Unlike many other defendants in his position, he does not have a record of returning to the United States after deportation. He knows he would face steep penalties if he were to return, including supervised release violations, illegal re-entry charges, and federal charges for any new offense conduct.

## CONCLUSION

For the aforementioned reasons, Mr. Martinez Cuevas respectfully requests the Court sentence him to time served and three years of supervised released.

Dated:   January 27, 2021                                    Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

_____/S_____
SOPHIA WHITING
Assistant Federal Public Defender